UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

VIVIAN XIANG,

                                 Plaintiff,

           -v-

EAGLE ENTERPRISES, LLC, MARKET AMERICA,
INC., AMY REMACHE, SHERRY SPESOCK, and STAR
HOGAN,

                               Defendants.

</td><td>

19 Civ. 1752 (PAE)

<u>OPINION & ORDER</u>

</td></tr>
</table>

PAUL A. ENGELMAYER, District Judge:

Plaintiff Vivian Xiang brings this action against her former employer Eagle Enterprises, LLC ("Eagle Enterprises"); its corporate parent Market America, Inc. ("Market America"); former supervisor Amy Remache; and two members of Market America's human resources team, Sherry Spesock and Star Hogan (together, the "Individual Defendants"). Xiang worked for Market America as a graphic designer for approximately five years until she was terminated. She alleges that Market America and Eagle Enterprises, by and through the Individual Defendants, discriminated against her and ultimately fired her because of her pregnancy. In her First Amended Complaint ("FAC"), she brings 13 claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a) *et seq.* ("Title VII"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 2000 *et seq.* ("ADA") (as amended 2008); the New York State Human Rights Law, N.Y. Executive Law § 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL").

Pending now is defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted in part and denied in part.

## I. Background[1]

### A. Facts

#### 1. The Parties

Market America is a product brokerage and internet marketing company. Eagle Enterprises is a staffing agency and a subsidiary of Market America. Xiang was employed by Eagle Enterprises as a graphic designer and completed work for various clients, including Market America. Remache is the Associate Art and Operations Director of Market America. Remache held supervisory authority over Xiang, including the ability to hire or fire her. Spesock is the Director of Human Resources of Market America. Xiang alleges that Spesock also held supervisory authority over her, including the ability to control her job duties and to hire or fire her. Hogan is Market America's Benefits Manager. Hogan did not have supervisory authority over Xiang.

#### 2. Overview of Xiang's Factual Allegations

In July 2013, Xiang was hired by a Market America subsidiary, Social Streaming & Shopping Development, LLC, to work as a New York City-based graphic designer. FAC ¶ 15. In January 2016, Xiang was transferred to the payroll of Eagle Enterprises. *Id.* ¶ 16. In April

---

[1] The Court draws the facts in this decision principally from the FAC. Dkt. 9 ("FAC"). *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). For purposes of the motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations in the FAC as true, drawing all reasonable inferences in Xiang's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

2018, Xiang informed her supervisor, Remache, that she was pregnant and would need to take a leave of absence in the coming months. *Id.* ¶ 17. In early June 2018, Xiang informed H.R. Director Spesock that she was pregnant and inquired about Market America's maternity leave policy. *Id.* ¶ 18. Three days later, after several follow-up phone calls, Xiang sent Spesock a second email. *Id.* ¶ 19. Spesock informed Xiang that she and Hogan would provide Xiang with maternity leave information the following week. *Id.*

Several days later, Xiang informed Remache that she had a pregnancy-related doctor's appointment and requested that she be permitted to work from home following the appointment. *Id.* ¶ 20. Remache denied this request and required Xiang to use Paid Time Off ("PTO") to attend the appointment. *Id.* At a team meeting the following day, Xiang alleges, Market America's time-off policy was discussed with her for the first time. *Id.* ¶ 21. Notwithstanding the policy, Xiang alleges that several of her colleagues had requested to work from home at the meeting and Remache granted those requests. *Id.* Some time later, Xiang again approached Remache and asked if she could work from home on days when she had pregnancy-related medical appointments. *Id.* ¶ 22. Remache again denied her request. *Id.* This was inconsistent with Xiang's understanding of Market America's work-from-home policy, which she believed only restricted working from home in July and August. *Id.*

Five days after she had been informed by Spesock that Hogan would be providing her with information on the company's maternity leave policy, Xiang followed up with Hogan and Spesock. *Id.* ¶ 23. Hogan informed her that she should contact Market America's insurance provider, UNUM, for information, *id.* ¶ 23, which in turn sent her back to Hogan, *id.* ¶ 24. When Xiang called Hogan again, Hogan informed her that she needed to check with Spesock before answering Xiang's questions. *Id.* ¶ 25. A few days later, Xiang called Hogan to follow up and

was informed that Hogan was still waiting for answers from Spesock.  *Id.* ¶ 26.  Xiang contends that she was never given the requested information from Market America.  *Id.* ¶ 27.

On June 29, 2018 Xiang began to feel nauseous at work and sought permission from Remache to leave work early.  *Id.* ¶ 28.  Remache insisted that Xiang use a half day of PTO, even though she would be absent from work for fewer than four hours.  *Id.* ¶ 29.  Xiang contends this, too, was contrary to Market America's PTO policy.  *Id.*  When Remache followed up with Xiang the following week about submitting her PTO request, *id.* ¶ 30, Xiang called and emailed Spesock seeking clarification of the PTO policy and information about Market America's maternity leave policy, which she still had not received.  *Id.* ¶ 31.  Spesock did not return her messages, and Xiang submitted her PTO request.  *Id.* ¶ 32.  She then contacted Remache and Market America's Art Director Kirsten MacCaull in a further attempt to clarify the PTO policy for partial absences in light of the number of pregnancy-related medical appointments she would need to attend in the months ahead.  *Id.*  Neither Remache nor MacCaull returned Xiang's messages.  *Id.*

On July 3, 2018, Xiang submitted the information she thought was relevant to UNUM so as to begin the processing of her maternity leave.  *Id.* ¶ 33.  A week later, her claim status on UNUM's website reflected that UNUM had requested information from Market America; the leave was never processed.  *Id.* ¶ 34.  On July 24, 2018, Remache and Spesock fired Xiang over the phone.  *Id.* ¶ 35.

**B.     Procedural History**

On September 5, 2018, Xiang filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").  *Id.* ¶ 3.  On November 27, 2018, she received a right to sue letter from the EEOC.  *Id.* ¶ 4.  On February 25, 2019, she filed her initial

complaint. Dkt. 1. On May 13, 2019, defendants filed a motion to dismiss, Dkt. 6, a supporting

memorandum of law, Dkt. 7 ("Def. Mem."), and a supporting declaration of Keith A. Markel,

Esq., Dkt. 8 ("Markel Dec.").

On June 3, 2019, Xiang filed the FAC. FAC. On June 24, 2019, defendants informed the

Court that they would rely on their previously filed motion to dismiss. Dkt. 11. On July 8, 2019,

the Court granted a consent motion to extend Xiang's deadline to oppose the motion to dismiss.

Dkt. 13. On August 7, 2019, Xiang filed an opposition. Dkt. 14 ("Opp'n"). On August 21,

2019, defendants filed their reply. Dkt. 15 ("Reply").

## II.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed where, as

a matter of law, "the allegations in a complaint, however true, could not raise a claim of

entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court

must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the

plaintiff." *Koch*, 699 F.3d at 145. That tenet, however, does not apply to legal conclusions. *See

Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.   Discussion

### A.    Materials Properly Before the Court

At the threshold, the Court must determine whether the documents submitted in the

Markel Declaration, on which defendants heavily rely, are properly considered at the motion to

dismiss stage. "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks and citations omitted) (collecting cases). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint." *Id.* (quoting *DiFolco*, 622 F.3d at 111); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006). The Second Circuit has explained that a "necessary prerequisite for taking into account materials extraneous to the complaint is that the plaintiff rely on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Nicosia*, 834 F.3d at 231 (internal quotation marks omitted).

Where a defendant's motion to dismiss improperly includes a document that is neither incorporated by reference in the complaint nor integral to it, a district court must either ignore the extraneous document or convert the motion to dismiss into a motion for summary judgment and allow discovery to proceed before ruling. Fed. R. Civ. P. 12(d).

The Markel Declaration attaches seven exhibits, broadly summarized as: (1) an email from Xiang sent in 2016, Markel Dec., Ex. A; (2) excerpts from Eagle Enterprises' employee handbook, *id.*, Ex. B; (3) a series of emails between other Market America employees on which Xiang is not copied, *id.*, Ex. C; (4) emails between Xiang and others regarding various work assignments dated October 2017, November 2017, and February 2018, *id.*, Ex. D; (5) emails between Xiang and a supervisor from January 2018, *id.*, Ex. E; (6) emails from supervisors to Xiang, and between supervisors (on which Xiang is not copied) from October 2017, February 2018, and March 2018, *id.*, Ex. F; and (7) Xiang's emails with Remache and Spesock in late June and early July 2018 regarding the PTO policy for partial absences, *id.*, Ex. G.

Of these exhibits, only the final one, Exhibit G, is incorporated by reference into the amended complaint. *See* FAC ¶¶ 28–32. The others are not referred to nor relied upon by the FAC in a way that renders them integral to it. Indeed, some predate the relevant time period of April–July 2019, or are email conversations to which Xiang was not privy. And while some parts of Eagle Enterprises' employee handbook may be relevant to the factual allegations in the FAC, the portion defendants include in Exhibit B says nothing about the company's PTO or work-from-home policies. The Court will therefore consider Exhibit G and disregard Exhibits A–F of the Markel Declaration in resolving the motion to dismiss.

## B. Xiang's Pregnancy Discrimination Claims under Title VII, the NYSHRL, and the NYCHRL

Xiang alleges that defendants discriminated against her on account of her pregnancy while she was employed, and ultimately terminated her because she was pregnant and had stated an intention to take maternity leave. She claims that this conduct violated several statutes.

### 1. Title VII Discrimination

Xiang first claims that Market America and Eagle Enterprises discriminated against her in violation of Title VII. FAC ¶¶ 47–50. Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against [them] with respect to . . . terms, conditions, or privileges of employment, because of [the] individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). "In 1978, Congress passed the [Pregnancy Discrimination Act ('PDA')], which expressly overruled the Supreme Court's holding in *General Electric Co. v. Gilbert*, 429 U.S. 125 (1976), that pregnancy discrimination is not sex discrimination." *Legg v. Ulster County.*, 820 F.3d 67, 72 (2d Cir. 2016). The PDA added the following language to Title VII's definitional section:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions;

7

and women affected by pregnancy, childbirth, or related medical conditions shall
be treated the same for all employment-related purposes . . . as other persons not so
affected but similar in their ability or inability to work . . . .

Pub. L. No. 95-555, 92 Stat. 2076 (1978) (codified at 42 U.S.C. § 2000e(k)); see *Newport News
Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 670–71 & n.1 (1983).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), the Supreme Court
defined the elements of a prima facie case for a claim of employment discrimination under Title
VII, which apply in the context of a pregnant employee's claim of wrongful termination. *See,
e.g.*, *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995). A plaintiff must plead sufficient
facts to show that (1) she is a member of a protected class; (2) she satisfactorily performed the
duties required by the position; (3) she was discharged; and (4) the discharge occurred in
circumstances giving rise to an inference of unlawful discrimination. *Id.* Where a plaintiff
employee alleges a failure to accommodate her pregnancy, to adequately plead a prima facie case
she must plead sufficient facts to show "[1] that she belongs to the protected class, [2] that she
sought accommodation, [3] that the employer did not accommodate her, and [4] that the
employer did accommodate others similar in their ability or inability to work." *Legg*, 820 F.3d
at 73 (internal quotation marks omitted); *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 229
(2015). Whether an employee is alleging wrongful termination or a discriminatory failure to
accommodate, "[t]he requirements to establish a prima facie case are minimal, and a plaintiff's
burden is therefore not onerous." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119,
128 (2d Cir. 2012) (internal quotation marks and citations omitted).

Here, Xiang's FAC pleads sufficient facts to make out a prima facie case of Title VII
pregnancy discrimination. First, it pleads facts suggesting that Market America, in applying or
purporting to apply its work-from-home and PTO policies, failed to accommodate her
pregnancy. According to the FAC, Remache on at least one occasion granted work-from-home

privileges to other members of Xiang's team but denied her request for the same. FAC ¶ 21. Xiang also pleads that she was obliged to use PTO for pregnancy-related medical appointments or short absences when such absences would not have otherwise required the use of paid leave. *Id.* ¶¶ 20, 22, 29. Second, Xiang pleads facts that satisfy her minimal burden of showing that her termination—four months after informing Market America that she was pregnant, and with her maternity leave becoming imminent, *see id.* ¶¶ 17–19, 23–27, 33–35—occurred under circumstances giving rise to an inference of unlawful discrimination.

Excising the references to extraneous documents, defendants' sole argument in opposition to this claim is that, because the three individual defendants implicated in the complaint—Remache, Spesock, and Hogan—are also women, defendants are entitled to a strong presumption that Xiang was not subjected to sex discrimination. Def. Mem. at 11–12; Reply at 4; *see Allen v. Chanel, Inc.*, No. 12 Civ. 6758 (LAP), 2015 WL 3938096, at *5 (S.D.N.Y. June 26, 2015) ("[W]hen the decision-maker is in the same protected class[] as the plaintiff-employee, courts can draw inferences against discriminatory intent."). Assuming *arguendo* the merits of this proposition, it gains limited traction here. That is because, as pled in Xiang's complaint, there is no indication that any of the decisionmakers in Xiang's case were pregnant. Because Xiang has exclusively pled employment discrimination on the basis of her pregnancy, the shared gender of Xiang and her superiors does not undermine Xiang's prima facie showing of discrimination. The Court therefore denies defendants' motion to dismiss Xiang's claim of discrimination under Title VII.

### 2. Discrimination in Violation of the NYSHRL

Xiang also alleges that all defendants discriminated against her in violation of the NYSHRL. FAC ¶¶ 64–68.

*a.     Claims Against Market America and Eagle Enterprises*

Employment discrimination claims brought under the NYSHRL are evaluated under the same standards that govern Title VII. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000). Therefore, for the same reasons the Court finds that Xiang has pled a prima facie case of Title VII discrimination against the two corporate defendants, the Court denies the motion to dismiss Xiang's claim of discrimination under the NYSHRL as to Market America and Eagle Enterprises.

*b.     Claims Against the Individual Defendants*

Unlike Title VII, the NYSHRL allows for individual liability. There are two available theories of liability: where the individual defendant is considered an "employer," N.Y. Exec. Law § 296(1), or where the defendant aided and abetted the unlawful discriminatory acts of others, *id.* § 296(6). *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521–22 (S.D.N.Y. 2015) (internal quotation marks, citations, and alterations omitted).

An individual defendant is liable as an "employer" under § 296(1) "when that individual has an ownership interest in the relevant organization *or* the power to do more than carry out personnel decisions made by others," *i.e.*, the power to hire or fire. *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (emphasis added) (internal quotation marks omitted). The NYSHRL's aiding and abetting provision makes it unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). The Second Circuit has held that "this language allow[s] a co-worker who actually participates in the conduct giving rise to a discrimination claim to be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (internal quotation marks omitted). This extends to personal liability "for aiding and abetting

allegedly unlawful discrimination by [an] employer even where [an individual defendant's] actions serve as the predicate for the employer's vicarious liability," so long as the employer's conduct has also been found to be discriminatory under the NYSHRL. *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 436 (E.D.N.Y. 2012); *accord Ulrich v. Soft Drink, Brewery Workers & Delivery Emps.*, No. 17 Civ. 4730 (KMK), 2019 WL 6498089, at *6 n.10 (S.D.N.Y. Dec. 3, 2019). The Court considers the three individual defendants in turn.

### i. Amy Remache

Xiang pleads that Remache discriminatorily denied her work-from-home privileges after Xiang revealed she was pregnant, and improperly required her to use PTO for pregnancy-related medical appointments. FAC ¶¶ 20–22, 29. Xiang also alleges that Remache, together with Spesock, fired her after she informed them she was pregnant and intended to take maternity leave. *Id.* ¶¶ 35–36. These factual allegations are sufficient to make out a prima facie case of aider and abettor liability under § 296(6). In addition, Xiang has pled that Remache had the power to hire and fire her, making Remache an "employer" under § 296(1). Xiang has therefore made out a prima facie case of NYSHRL discrimination as to Remache, under both the employer and aider and abettor theories of individual liability.

### ii. Sherry Spesock

Xiang pleads that Spesock actively obfuscated her efforts to process her maternity leave, FAC ¶¶ 19, 23, 31, discriminated against her by requiring her to use PTO for pregnancy-related medical appointments, *id.* ¶ 30, and later terminated her because of her pregnancy, *id.* ¶¶ 35–36. Xiang has pled that Spesock had the power to hire and fire her. Therefore, as with Remache, Xiang's factual allegations are sufficient at the motion to dismiss stage to establish a prima facie case of NYSHRL discrimination as to Spesock, under both the employer and aider and abettor theories of individual liability.

### iii. Star Hogan

Unlike Remache and Spesock, Xiang has not pled that Hogan had the power to hire or fire her. Because Xiang has also not pled that Hogan had any ownership interest in Market America or Eagle Enterprises, Xiang cannot establish individual liability as to Hogan as an "employer" under NYSHRL § 296(1).

Xiang has also failed to plead sufficient facts to establish that Hogan "actually participate[d] in the conduct giving rise to a discrimination claim," *Feingold*, 366 F.3d at 157, such that the Court could find aiding and abetting liability. Rather, the FAC makes clear that Hogan's role was limited to directing Xiang to contact Market America's insurance provider UNUM, FAC ¶ 23, or seeking guidance from Spesock in order to answer Xiang's questions about maternity leave, *id.* ¶¶ 25, 26. Xiang has not pled that Hogan had independent decision-making authority with regard to these matters. And, even drawing the inference that Hogan was unacceptably tardy in providing Xiang with the information she sought, Xiang has failed to plead facts that, if true, would establish that Hogan aided and abetted in discriminatory conduct. "Aiding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose." *Tate v. Rocketball, Ltd.*, 45 F. Supp. 3d 268, 273 (E.D.N.Y. 2014) (citation omitted). Such is the case here. Thus, on the facts pled in the FAC, the Court dismisses Xiang's claim of discrimination under the NYSHRL as to Hogan only.

### 3. Discrimination Under the NYCHRL

Xiang also brings claims of pregnancy discrimination against all defendants under the NYCHRL, N.Y.C. Admin. Code § 8-107(1). FAC ¶¶ 78–81. "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a

construction is reasonably possible. Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal citations and quotation marks omitted). To establish a gender discrimination claim under the NYCHRL, "the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender." *Id.* at 110 (internal quotation marks omitted).

a.    *Market America and Eagle Enterprises*

Because the Court has found that Xiang has pled sufficient facts to make out a prima facie case of discrimination under the stricter standard of Title VII, Xiang has also made out a prima facie case of discrimination under the NYCHRL as to Market America and Eagle Enterprises.

b.    *Individual Defendants*

"The NYCHRL provides a broader basis for direct individual liability than the NYSHRL." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012). The NYCHRL makes it "an unlawful discriminatory practice . . . [f]or an employer *or an employee or agent thereof*, because of the . . . gender [or pregnancy] . . . of any person . . . to discharge from employment such person; or . . . discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a) (emphasis added). "Thus, the NYCHRL provides for individual liability of an employee regardless of ownership or decisionmaking power." *Malena*, 886 F. Supp. 2d at 366 (internal quotation marks omitted). Simply put, "[a]n individual defendant may . . . be held personally liable under the NYCHRL if he participates in the conduct giving rise to the

13

discrimination claim." *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009).

"A claim for aider and abettor liability is also cognizable under the NYCHRL and is susceptible to the same standard as [aiding and abetting] under the NYSHRL, as [the] language of the two laws is virtually identical." *Id.* (internal quotation marks omitted). Like the NYSHRL, liability must be found as to the employer before an individual employee can be liable for aiding and abetting discriminatory conduct under the NYCHRL. *Id.*

For the same reasons that Court has found that Xiang has pled a prima facie case of individual liability as to Remache and Spesock under the NYSHRL, Xiang has adequately pled facts to make out a prima facie case of individual liability under the NYCHRL, both under a theory of direct liability and aiding-and-abetting liability.

Xiang's NYSHRL claims against Hogan did not, however, survive. And none of the facts Xiang has pled as to Hogan, even under the more generous NYCHRL standard, are sufficient to make out a prima facie case of discrimination, whether under a theory of direct or aiding-and-abetting liability. The Court therefore dismisses the claim of NYCHRL discrimination as to defendant Hogan only.

## C. Violation of the Pregnant Workers Fairness Act

Xiang next alleges a violation of New York City's Pregnant Workers Fairness Act ("PWFA") by all defendants. FAC ¶¶ 96–99. The PWFA added language to the NYCHRL and, in relevant part, provides that

> [i]t shall be an unlawful discriminatory practice for an employer to refuse to provide a reasonable accommodation, as defined in section 8-102, to the needs of an employee for the employee's pregnancy, childbirth, or related medical condition that will allow the employee to perform the essential requisites of the job, provided that such employee's pregnancy, childbirth, or related medical condition is known or should have been known by the employer.

N.Y.C. Admin. Code § 8-107(22).

At the outset, this provision, by its terms, is limited to employers. The Court therefore dismisses this cause of action as to the Individual Defendants. As to Market America and Eagle Enterprises, although the question is close, Xiang has pled sufficient facts to make out a prima facie case of a violation of the PWFA. First, Xiang has pled that her employer was aware of her pregnancy. FAC ¶¶ 17, 18. Second, Xiang's request to work from home on days when she had pregnancy-related medical appointments, as pled, can be construed as a request for a reasonable accommodation to allow her to continue working during her pregnancy. *Id.* ¶¶ 20, 22, 32. Xiang's allegation that work-from-home privileges were granted to non-pregnant employees, *id.* ¶ 21, bolsters the inference that hers was a request for a reasonable accommodation. Finally, Xiang's termination in the face of her repeated requests for approval of her upcoming maternity leave can be viewed as the denial of a reasonable accommodation to facilitate her childbirth. The Court will therefore allow this claim to proceed to discovery as against Market America and Eagle Enterprises.

### D. Discrimination in Violation of the ADA

Xiang also claims that Market America and Eagle Enterprises discriminated against her in violation of the ADA. *Id.* ¶¶ 55–60. Xiang relies on 42 U.S.C. § 12112(a)(4), which prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." § 12112(a)(4). To make out a prima facie case for associational discrimination under the ADA, a plaintiff must plead sufficient facts to show "1) that she was qualified for the job at the time of an adverse employment action; 2) that she was subjected to [an] adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances

raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 432 (2d Cir. 2016). Xiang, however, has failed to plead any facts to make out a prima facie case of associational discrimination. This claim is therefore dismissed.[2]

### E. Retaliation in Violation of Title VII, the NYSHRL, the NYCHRL, and the ADA.

Xiang next alleges that she was retaliated against in violation of various statutes. The Court considers each in turn.

#### 1. Title VII Retaliation

Xiang first alleges that Market America and Eagle Enterprises retaliated against her in violation of Title VII. FAC ¶¶ 51–54. In evaluating Title VII retaliation claims, "courts follow the familiar burden-shifting approach of *McDonnell Douglas Corp.*" *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). A plaintiff must show that: (1) she was engaged in protected activity under Title VII; (2) the employer was aware of that activity; (3) the employer took a materially adverse action against the plaintiff; and (4) there was a causal connection between the

---

[2] For avoidance of doubt, Xiang would not have fared any better had she alleged a failure to provide a reasonable accommodation under the ADA. 42 U.S.C. § 12112(b)(5)(A). Where a plaintiff with a disability claims that she "can perform a particular job with a reasonable accommodation, the prima facie burden requires a showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). However, "[e]very court to consider the question of whether pregnancy in and of itself is a 'disability' within the meaning of the ADA has concluded that it is not." *Minott v. Port Auth. of N.Y. & N.J.*, 116 F. Supp. 2d 513, 525 (S.D.N.Y. 2000). "Complications arising out of pregnancy are, in certain circumstances, held to constitute a disability under the ADA. However, [Xiang] pleads no facts suggesting that she suffered from any complication arising out of her pregnancy." *Shine v. City of New York*, No. 12 Civ. 8393 (CM), 2013 WL 5231472, at *3 (S.D.N.Y. July 24, 2013) (internal citations omitted). Because Xiang has not alleged any other disability, an ADA claim, based solely on her pregnancy, would fail.

protected activity and that adverse action. *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012); *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006).

Section 704(a) of Title VII defines "protected activity" so as to make it unlawful "for an employer to discriminate against any . . . employee[] . . . because [that individual] has opposed any practice" made unlawful by Title VII or has "made a charge, testified, assisted, or participated in" a Title VII investigation or proceeding. 42 U.S.C. § 2000e–3(a). "For purposes of determining whether an activity is protected, § 704(a) includes both an opposition clause and a participation clause. The opposition clause makes it unlawful for an employer to retaliate against an individual because she opposed any practice made unlawful by Title VII, while the participation clause makes it unlawful to retaliate against an individual because she made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (internal quotation marks and citation omitted); *Townsend*, 679 F.3d at 48.

Xiang's claim of Title VII discrimination fails on the first element of the prima facie case. Notwithstanding her conclusory statement that she was retaliated against "because of her opposition to the unlawful employment practices of" her employer, FAC ¶ 53, she pleads no facts that even suggest that she had engaged in protected activity. This claim is therefore dismissed.

### 2.    Retaliation Under the NYSHRL

Xiang next claims retaliation in violation of the NYSHRL by all defendants. *Id.* ¶¶ 69–72. The NYSHRL's anti-retaliation provision makes it unlawful "to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article." N.Y. Exec. Law § 296(7). "To establish a prima facie case of retaliation under the NYSHRL, as

under [Title VII], a plaintiff-employee must show that (1) she engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action." *Malena*, 886 F. Supp. 2d at 361–62.

As with her Title VII retaliation claim, Xiang's NYSHRL retaliation claim founders on the first prong of the prima facie case: She has not pled facts that, if true, would establish that she engaged in protected activity under the NYSHRL. This claim is therefore dismissed.

### 3. Retaliation Under the NYCHRL

Xiang next claims retaliation under the NYCHRL by all defendants. FAC ¶¶ 82–85. The NYCHRL's definition of retaliation is broader than its federal and state counterparts. It provides:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, (v) *requested a reasonable accommodation under this chapter*, or (vi) provided any information to the commission pursuant to the terms of a conciliation agreement.

N.Y.C. Admin. Code § 8-107(7) (emphasis added). In addition to its broader definition of protected activity, "rather than requiring a plaintiff to show an adverse employment action, [the NYCHRL] only requires [her] to show that something happened that was reasonably likely to deter a person from engaging in protected activity. Otherwise, a prima facie case of retaliation faces the same requirements under the NYCHRL as under the NYSHRL." *Malena*, 886 F. Supp. 2d at 362 (internal quotation marks and citations omitted).

Based on the plain text of the NYCHRL, and in accord with the view of several other courts in this District, the Court concludes that Xiang has pled the bare minimum to establish that she engaged in protected activity under the NYCHRL on the theory that she was terminated in retaliation for her reasonable accommodation requests of working from home on days when she had pregnancy-related medical appointments, and for her reasonable accommodation request of maternity leave. *See Pacheco v. Park S. Hotel, LLC*, No. 12 Civ. 9127 (PAC), 2014 WL 292348, at *4 (S.D.N.Y. Jan. 27, 2014) ("[R]equests for accommodation constitute protected activity under the ADA and NYCHRL."); *see also Scorsonelli v. Madison Dentistry, P.C.*, No. 18 Civ. 4269 (JMF), 2019 WL 6032787, at *1 n.1 (S.D.N.Y. Nov. 14, 2019). She has also pled facts that, if true, would establish that her employer was aware of this protected activity and that she was terminated because of it. Consistent with its analysis of NYCHRL liability for discrimination, *supra* pp. 12–14, the Court will allow this claim to proceed against Market America, Eagle Enterprises, Remache, and Spesock.

### 4. ADA Retaliation

Xiang next claims that Market America and Eagle Enterprises retaliated against her in violation of the ADA. FAC ¶¶ 61–63. The Court's holding that Xiang has failed to plead sufficient facts to make out a prima facie case of ADA discrimination is not itself fatal to her claim of ADA retaliation. *See Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999). "[A] plaintiff need not establish that the conduct [s]he opposed was actually a violation of the [ADA] so long as [s]he can establish that [s]he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated that law." *Id.*

Courts in this Circuit apply the Title VII retaliation test to ADA claims of retaliation. *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) ("[W]e conclude that it is appropriate to apply the framework used in analyzing retaliation claims under

Title VII in analyzing a claim of retaliation under the ADA.").  Thus, to establish a prima facie

case of ADA retaliation, "a plaintiff must establish that (1) the employee was engaged in an

activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment

action adverse to the plaintiff occurred, and (4) there existed a causal connection between the

protected activity and the adverse employment action."  *Id.*

"An employee's complaint may qualify as protected activity, satisfying the first element

of this test, so long as the employee has a good faith, reasonable belief that the underlying

challenged actions of the employer violated the law.  And not just any law—the plaintiff is

required to have had a good faith, reasonable belief that she was opposing an employment

practice made unlawful by" the ADA.  *See Kelly v. Howard I. Shapiro & Assocs. Consulting

Eng'rs*, 716 F.3d 10, 14 (2d Cir. 2013) (internal quotation marks, brackets, and citation omitted)

(analyzing first prong of the retaliation test in the identical context of Title VII); *see also

Gregory v. Daly*, 243 F.3d 687, 700–01 (2d Cir. 2001) ("The law protects employees in the filing

of formal charges of discrimination as well as in the making of informal protests of

discrimination, including making complaints to management, so long as the employee has a good

faith, reasonable belief that the underlying challenged actions of the employer violated the law."

(internal quotation marks and citation omitted)) (Title VII retaliation); *McMenemy v. City of

Rochester*, 241 F.3d 279, 283 (2d Cir. 2001) ("[T]he employment practices opposed by the

plaintiff need not have actually amounted to a violation of Title VII.  Rather, the plaintiff must

have had a good faith, reasonable belief that the underlying challenged actions of the employer

violated the law." (internal quotation marks and citation omitted)) (Title VII retaliation); *Muller*,

187 F.3d at 311 (same) (ADA retaliation).

Xiang's claim of ADA retaliation, however, fails because she has not pled any facts

which, if true, would show that she engaged in protected activity *under the ADA*.  Indeed, as

noted with regard to Xiang's claims of retaliation under Title VII and the NYSHRL, the FAC is

devoid of factual assertions that she engaged in any protected activity whatsoever.  Xiang's

claim of ADA retaliation is therefore dismissed.

### F.     Employer Liability for Discriminatory Conduct Under the NYCHRL

Xiang next brings claims under the NYCHRL for the discriminatory conduct of

employees.  FAC ¶¶ 90–92; N.Y.C. Admin. Law § 8-107(13).  As relevant here, this section

provides that "[a]n employer shall be liable for an unlawful discriminatory practice based upon

the conduct of an employee or agent which is in violation of any provision of this section other

than subdivisions 1 and 2 of" § 8-107, *id.* § 8-107(13)(a), and "for an unlawful discriminatory

practice based upon the conduct of an employee or agent which is in violation of subdivision 1 or

2 . . . where [t]he employee or agent exercised managerial or supervisory responsibility," *id.*

§ 8-107(13)(b)(1).  The New York Court of Appeals has interpreted this provision, consistent

with its text and legislative history, to impose strict liability on employers when either provision

is met.  *See Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 480 (2010).

At the outset, although Xiang brings claims under § 8-107(13) against all defendants, the

Court dismisses such claims against the Individual Defendants, because this statute, by its terms,

imputes liability only to an employer.  As to Market America and Eagle Enterprises, the Court

has held that Xiang has adequately pled facts to support a prima facie case of two violations of

the NYCHRL by employees Remache and Spesock.  The first, discrimination in violation of the

PWFA, N.Y.C. Admin. Law § 8-107(22), falls under § 8-107(13)(a).  Xiang has therefore

successfully pled facts that, if established, would establish employer liability for this violation.

The second, pregnancy discrimination in violation of § 8-107(1)(a) of the NYCHRL, falls under

§ 8-107(13)(b)(1), which imposes strict liability on an employer where the relevant employee-actors are supervisors or managers. Xiang has alleged that Remache and Spesock supervised her work and had the ability to fire her. Xiang has therefore adequately made out a prima facie case of employer liability for this violation as well.

### G. Xiang's Remaining Claims

Xiang's remaining claims are easily dispensed with. The Court addresses them in turn.

#### 1. Xiang's Seventh Cause of Action: Aiding and Abetting Under the NYSHRL

Xiang separately alleges aiding and abetting discriminatory conduct under the NYSHRL against all defendants. FAC ¶¶ 73–77. As to Market America and Eagle Enterprises, "there can be no aider-and-abettor liability as to the Corporate Defendants for aiding and abetting their own conduct," nor can they be "liable for aiding [the individual defendants] to aid their own conduct." *Malena*, 886 F. Supp. 2d at 368. As to the Individual Defendants, this cause of action is duplicative of Xiang's fifth cause of action: discrimination under the NYSHRL as to all defendants. As part of its analysis of that claim, the Court has already considered whether Xiang has pled adequate facts to support, *inter alia*, an aiding and abetting theory of liability as to each of the individual defendants and concluded that she can for Remache and Spesock, but not for Hogan. *See supra* pp. 9–12. Because it is not viable against Market America and Eagle Enterprises, and duplicative of another cause of action as against the Individual Defendants, the Court dismisses Xiang's seventh cause of action in its entirety.

#### 2. Xiang's Tenth Cause of Action: Aiding and Abetting Under the NYCHRL

The Court has already considered the liability of each defendant for discrimination under the NYCHRL. *See supra* pp. 12–14. Xiang's tenth cause of action, FAC ¶¶ 86–89, is therefore dismissed as to all defendants for the same reasons that her seventh cause of action is dismissed.

22

### 3. Xiang's Twelfth Cause of Action: Discrimination Under the PWFA

Xiang's twelfth cause of action pleads discrimination under the PWFA, but cites to the NYCHRL's anti-discrimination provision at § 8-107(1)(a). FAC ¶¶ 93–95. The Court has already considered both Xiang's claim of pregnancy discrimination under the NYCHRL, *see supra* pp. 12–14, and her claim of a failure to provide a reasonable accommodation under the PWFA, *see supra* pp. 14–15. Xiang's twelfth cause of action is therefore duplicative and is hereby dismissed as moot.

### 4. Xiang's Hostile Work Environment Claim

In her brief in opposition to the motion to dismiss, Xiang for the first time states that she has pled a claim of hostile work environment. Opp'n at 17–19. No such claim appears amongst the 13 causes of action in the FAC, nor is such a claim apparent from the factual allegations made there.[3] Xiang, therefore, may not proceed with a hostile work environment claim in this litigation.

## CONCLUSION

For the reasons set out above, defendants' motion to dismiss is therefore granted in part and denied in part as follows:

- First Cause of Action—Discrimination under Title VII by Market America and Eagle Enterprises: the motion to dismiss is denied;

- Second Cause of Action—Retaliation under Title VII by Market America and Eagle Enterprises: the motion to dismiss is granted;

---

[3] Xiang's two free-floating references to "a hostile work environment," FAC ¶¶ 37, 80, carry no weight. Factual allegations, not bald legal conclusions, are required for a claim to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions . . . will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" (quoting *Twombly*, 550 U.S. at 555) (internal citations and alterations omitted)).

- Third Cause of Action—Discrimination under the ADA by Market America and Eagle Enterprises: the motion to dismiss is granted;

- Fourth Cause of Action—Retaliation under the ADA by Market America and Eagle Enterprises: the motion to dismiss is granted;

- Fifth Cause of Action—Discrimination under the NYSHRL by all defendants: the motion to dismiss is granted as to Star Hogan, but denied as to all other defendants;

- Sixth Cause of Action—Retaliation under the NYSHRL by all defendants: the motion to dismiss is granted;

- Seventh Cause of Action—Aiding and abetting discrimination under the NYSHRL: the motion to dismiss is granted as to Market America and Eagle Enterprises, and, as to the Individual Defendants, this cause of action is duplicative of the fifth cause of action and is therefore dismissed as moot;

- Eighth Cause of Action—Discrimination under the NYCHRL by all defendants: the motion to dismiss is granted as to Star Hogan, but denied as to all other defendants;

- Ninth Cause of Action—Retaliation under the NYCHRL by all defendants: the motion to dismiss is granted as to Star Hogan, but denied as to all other defendants;

- Tenth Cause of Action—Aiding and abetting discrimination under the NYCHRL: the motion to dismiss is granted as to Market America and Eagle Enterprises and, as to the Individual Defendants, the cause of action is duplicative of the eighth cause of action and is therefore dismissed as moot;

- Eleventh Cause of Action—Employer liability under the NYCHRL: the motion to dismiss is granted as to Amy Remache, Sherry Spesock, and Star Hogan, but denied as to Market America and Eagle Enterprises;

- Twelfth Cause of Action—Discrimination under the PWFA: this cause of action is duplicative of the eighth and thirteenth causes of action and is therefore dismissed as moot;

- Thirteenth Cause of Action—Failure to provide a reasonable accommodation under the PWFA: the motion to dismiss is granted as to Amy Remache, Sherry Spesock, and Star Hogan, but denied as to defendants Market America and Eagle Enterprises.

Finally, because the Court has granted the motion to dismiss as it relates to all counts against Star Hogan, Hogan is hereby dismissed as a defendant in this case.

Discovery will now commence on the remaining claims. By January 29, 2020, the parties are to submit a proposed case management plan, consistent with the Court's Individual Rules, that provides for the close of fact discovery by the end of May 2020. The Clerk of Court is respectfully directed to terminate the motion pending at docket 6.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: January 16, 2020
       New York, New York